UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**AUSTIN F. WESTBROOK**                                            **CIVIL ACTION**

**VERSUS**                                                                      **NO. 11-599**

**PIKE ELECTRIC, L.L.C., ET AL.**                             **SECTION "K"(5)**

### ORDER AND REASONS

Before the Court is Defendants' Motion to Dismiss or Transfer under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406 and Alternative Rule 12(b)(6) Motion to Dismiss (Doc. 4) filed by defendants, Pike Electric, LLC and Pike Energy Solutions LLC.[1] Having reviewed the pleadings, memoranda and the relevant law, the Court is prepared to rule.

**Background**

**Initial State Court Petition**

This suit was filed on February 22, 2011, in the Twenty-Second Judicial District Court for the Parish of St. Tammany for State of Louisiana by Austin F. Westbrook ("Westbrook"). Initially, plaintiff sued Pike Electric, LLC, ("Pike Electric") a Delaware corporation with its principal place of business in Mount Airy, North Carolina; Pike Energy Solutions, LLC, ("Pike Energy") a Delaware corporation with a principal place of business in Mount Airy, North Carolina; and Pike Enterprises, Inc., ("Pike Enterprises") a North Carolina corporation with its

---

[1] The nomenclature of these companies requires explication. Apparently, the corporation that purchased Red Simpson, Inc. for who plaintiff worked was Pike Electric, Inc. That entity became Pike Electric, LLC after the Employment Agreement at issue herein was signed. Then on January 1, 2011, the LLC became Pike Enterprises, Inc. At the time the instant motion was filed Pike Enterprises, Inc. had not been served, and thus counsel stated that "no responsive pleading [was] due at that time." Thus, this defendant was not a party to the instant motion. These three entities will be referred to collectively as the Pike Companies.

principal place of business in Mount Airy, North Carolina; and an unnamed insurance company for damages arising out of an Employment Agreement he had with Pike Electric. (Rec. Doc. No. 1).

Westbrook contends that from 1984 through June of 2004 he was employed by Red Simpson, Inc. with his last position being President of Eastern Operations for that company. (Original Petition, ¶ 9). Red Simpson, Inc. was acquired by Pike Electric, and plaintiff was hired as Regional Vice President. He contends that he was entitled to wages, medical and health benefits, vacation benefits and company stock options under the terms of his employment. He maintains that while employed he was twice demoted with cuts in pay and benefits. Then, on January12, 2009, Westbrook, while serving as the Operations Vice President, was required to sign an Employment Agreement with Pike Electric.[2]

The Employment Contract contains the following salient provisions with Westbrook being referred to therein as "Executive":

>  **6. TERMINATION OF EMPLOYMENT**
>
>  **D. Termination Without Cause; Voluntary Termination.**
>  Either the Company or the Executive may terminate employment without cause at any time.
>
>  **E. Payments in the Event of Termination.**
>  . . .
>  **iii. Termination by Executive Not for Cause**
>  If Executive's employment is terminated . . . by Executive not for cause, and subject to Executive entering into a Separation Agreement and General Release and abiding by the Restrictive Covenants in Paragraph 7 of this Agreement, Executive will receive the following benefits:

---

[2] Pike Electric, Inc. was the entity which entered into this contract; however, it was converted to a limited liability company, Pike Electric, LLC.

      a.    Severance payments equal to twelve months of Executive's annual Base Salary at termination payable of a schedule determined by Employer.

      b.    Continuation of Executive's medical and health benefits for the lesser of twelve (1) months or the period ending on the date Executive become entitled to medical and health benefits as a result of subsequent employment, or otherwise.

      c.    Award of vested options and/or restricted stock.

**7.    RESTRICTIVE COVENANTS.**

    **B. Non-Competition.**

Executive acknowledges that Company's business is highly competitive. Executive agrees, for the consideration stated in this Agreement, that Executive will not for one(1) year from the date of termination, directly or indirectly, engage in any competing business of a customer or competitor at a level of responsibility that is equal to or greater than that which Executive occupies on the effective date of this Agreement.

    **C. Non-Solicitation of Customers and Employees.**

Executive recognizes that Executive will possess confidential and valuable information not generally known about Company and other employees of Company and agrees that for one (1) year from termination of employment, regardless of the reason for termination, Executive will not, directly or indirectly, solicit or recruit any employee of the Company for the purpose of being employed by Executive or by any business on whose behalf Executive is acting as an agent, representative or employee.

(Rec. Doc. 5-1, pp. 3 and 4 of 6).

Apparently, the relationship between the Pike Electric and plaintiff deteriorated, and Westbrook resigned on January 27, 2011. With this resignation, plaintiff contends that defendants have not fulfilled the terms of the Employment Agreement as to compensation upon termination and that the non-compete and non-solicitation provisions are unenforceable. Specifically, in the original petition six "counts" were enumerated as follows:

    Count 1    Claim for unpaid wages per La. Rev. Stat. Ann. §23:631, et seq.

      Count 2        Breach of contract

      Count 3        Breach of contract–declaratory judgment as to the Non-Competition and the Non-Solicitation Provisions

      Count 4        Breach of implied good faith and fair dealing

      Count 5        Conversion

      Count 6        Enrichment without cause

### Motion to Transfer and Dismiss filed by Pike Electric and Pike Energy

Defendants removed the matter based on diversity jurisdiction to federal court on March 16, 2011, and filed the instant motion on April 7, 2011. Defendants seek pursuant to Fed. R. Civ. Pro. 12(b)(3) and 28 U.S.C. § 1406 the dismissal or transfer of this case to the United States District Court for the District of Delaware. The motion is based on Paragraph 8(C) of the Employment Agreement which provides:

> This Agreement and the legal relations thus created between the parties hereto shall be governed by and construed under and in accordance with the internal laws of the State of Delaware without reference to the principles of conflicts of laws. Any and all disputes between the parties arising pursuant to this Agreement will be heard and determined before an appropriate federal court in Delaware, or if not maintainable there, in an appropriate state court.

(Doc. 5-1, p. 5 of 6).

In the alternative, Pike Electric and Pike Energy seek dismissal of the breach of implied good faith and fair dealing (Count 4), conversion (Count 5) and enrichment without cause (Count 6) claims in the initial petition pursuant to Rule 12(b)(6) for failure to state a claim for which relief may be granted. In addition, Pike Energy seeks dismissal of the claims for unpaid

wages (Count 1), for breach of contract (Count 2) and for the unenforceability of the non-compete/non-solicitation clauses of the Employment Agreement (Counts 3) of the initial petition for failure to state a claim.

**First Amended Complaint for Unpaid Wages**

After the initial suit was filed but before the instant motion was filed, the general counsel for defendant sent a Separation Agreement and General Release ("the Release") to plaintiff. Westbrook contends that the Separation Agreement which is contemplated under the Employment Agreement contains new restrictive covenants beyond those in the Employment Agreement and that this Release is in direct contravention of the terms of the Employment Agreement, Louisiana law and public policy. (Doc. 5, at 5 of 12). Plaintiff filed on April 19, 2011, a First Amended Complaint for Unpaid Wages, Breach of Contract and for Declaratory Judgment (Doc. 5) which includes these subsequent occurrences and new claims based thereon.

In the First Amended Complaint, Pike Energy was dropped as a defendant. In addition, the original Count 5 for Conversion was dropped; the Enrichment without Cause became Count 5 and an additional claim for Violation of Louisiana Unfair Trade Practices Act (Count 6) were added. The Court will first address the effect of the filing of this Amended Complaint.

**ANALYSIS**

**Effect of First Amended Complaint**

Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure provide, *inter alia,* that a party may amend its pleading once as a matter of course 21 days after service of a motion under Rule 12(b). As such, the First Amended Complaint supercedes the original petition and renders it without any legal effect so long as the amended complaint does not refer to or adopt or incorporates by reference the earlier pleading. *Canal Ins. Co. v. Coleman*, 625 F.3d 244, 246 n.2 (5th Cir. 2010); *King v. Dogan*. 31 F.3d 344, 346 (5th Cir. 1994). Westbrook has complied with Rule 15(a)(1)(B) which renders all allegations against Pike Energy no longer extant. Accordingly,

**IT IS ORDERED** that the Motion to Dismiss (Doc. 4) with respect to all six counts against Pike Energy Solutions, LLC is rendered **MOOT**.

**IT IS FURTHER ORDERED** that the Motion to Dismiss with respect to the omitted Conversion claim (Count 5 of the Original Petition) is **MOOT** as to Pike Electric, Inc. as well.

Thus, the issues that remain are:

1. Whether this matter should be transferred to Delaware;

2. Whether the claim of the breach of implied good faith and fair dealing (First Amended Complaint Count 4) should be dismissed as to Pike Electric; and

3. Whether the claim for enrichment without cause (First Amended Complaint Count 5) should be dismissed as to Pike Electric.

**This Matter Should Not Be Transferred to Delaware**

Rule 12(b)(3) of the Federal Rules of Civil Procedure provides that a party may assert an "improper venue" defense by motion. Section 1406 of Title 28 of the United States Code provides that a court must dismiss or transfer an action if the plaintiff "lay[s] venue in the worng division or district." As noted above, defendants maintain that under the terms of the Employment Agreement, in particular the forum selection clause in Paragraph 8, this matter should be transferred to Delaware pursuant thereto.

This position ignores Louisiana statutory law as well as the case law of this circuit. Section 23:921(A)(2) provides:

> **The provisions of every employment contract or agreement**, or provisions thereof, **by which any foreign or domestic employer** or any other person or entity includes a choice of forum clause or choice of law clause in an employee's contract of employment or collective bargaining agreement, or **attempts to enforce either a choice of forum clause or choice of law clause in any civil or administrative action involving an employee, shall be null and void** except where the choice of forum clause or choice of law clause is expressly, knowingly and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action.

La. Rev. Stat. § 23:921A(2) (emphasis added). *See Sawicki v. K/S Stavandger Prince*, 802 So.2d 598 (La. 2001). Clearly, in this instance, Mr. Westbrook has not voluntarily agreed or ratified Paragraph 8(C) of the Employment Agreement to the choice of law or forum selection clause to litigate this matter in Delaware.

Moreover, as stated by the United States Court of Appeals for the Fifth Circuit:

> Sitting in diversity, this Court is required to apply the Louisiana approach to conflicts of law. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61, S. Ct. 1020, 85 L.Ed. 1477 (1941). Louisiana allows parties to stipulate in their contracts which state's laws are to govern them. *White v. Crook*, 426 So.2d 334 (La. App. 2d Cir. 1983). *See Delhomme Industries, Inc. v. Houston Beechcraft, Inc.*, 669 F.2d 1049 (5th Cir. 1982)**. Such contractual stipulations**

> **are not honored, however, where "there are legal or 'strong public policy considerations justifying the refusal to honor the contract as written**.'" *ADR v. Graves*, 374 So.2d 699, 700-01 (La.App. 1st Cir. 1979).  *See Davis v. Humble Oil and Refining Co.*, 283 So.2d 783, 794 (La. App. 1st Cir. 1973).

*NCH Corp. v. Broyles*, 749 F.2d 247, 250 (5th Cir. 1985) (emphasis added).  The appellate court then recognized that La. Rev. Stat. §23:921 provides evidence of such a strong public policy and applied Louisiana law.  *Id*. at 251.

As stated in *Sawacki*:

> Louisiana Revised State 23:921A(2) is a strong expression of Louisiana public policy concerning forum selection clauses wherein the legislature clearly intended to allow Louisiana courts to adjudicate the claims of plaintiffs who have properly invoked their jurisdiction.  Thus suits validly filed in this state can remain here, despite forum selection clauses to the contrary unless the clause was expressly, knowingly and voluntarily entered into and ratified after the occurrence of the incident which gives rise to the litigation.  The legislature has expressed Louisiana's strong policy with a legitimate concern for providing justice to those parties who would otherwise be entitled to adjudication in a Louisiana court.  Furthermore, the forum section requirements of La. Rev. Stat. 23:921(A)(2) are based upon reasonable conditions and are of a character appropriate to the public purpose justifying the legislation's adoption.  The requirement that forum selection clauses be expressly, knowingly and voluntarily entered into and ratified after the occurrence of injury is a reasonable condition, and is appropriately geared toward Louisiana's public policy decision to allow its state courts to adjudicate claims brought within its jurisdiction.

*Sawacki*, 802 So.2d at 606.  Likewise in a Louisiana appellate court has noted:

> "Louisiana's strong public policy restricting these types of agreements is based upon an underlying state desire to prevent an individual from contractually depriving himself of the ability to support himself and consequently becoming a public burden. Because such covenants are in derogation of the common right, they must be strictly construed against the party seeking their enforcement. *SWAT 24 Shreveport Bossier, Inc. v. Bond, supra,* 00-1695, p. 5, 808 So.2d at 298 (citations omitted).

*Bell v. Rimkus Consulting Group, Inc. of Louisiana,* 983 So.2d 927, 930  (La. App.5th  Cir. 2008):

8

*Id.* at 930.  Thus, *Bell* court applied Louisiana law to an employment agreement despite choice of Texas law in the agreement.  *See Lobrano v. C.H. Robinson Worldwide, Inc.,* 2011 WL 52602, *4, n.7 (W.D. La. Jan. 7, 2011) (Foote, J.); *Restivo v. Hanger Prosthetics & Orthotics, Inc.*, 483 F.Supp.2d 521 (E.D.La. 2007) (Duval, J.).  Accordingly, finding that the choice of forum and choice of law provisions in the Employment Agreement without force under Louisiana law,

**IT IS ORDERED** that Defendants' Motion to Dismiss or Transfer under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406 is **DENIED**.

**Motion to Dismiss Based on Rule 12(b)(6)**

    **The Applicable Standard**

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the complaint must be liberally construed in favor of plaintiff, and all facts pleaded in the original complaint must be taken as true. *Campbell v. Wells Fargo Bank, N.A.,* 781 F.2d 440, 442 (5th Cir.1980). In *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544, 563, 127 S.Ct. 1955, 1969 (2007), the Supreme Court "retired" the *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957), standard for analyzing a motion to dismiss under Rule 12(b)(6) which held that a district court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Noting that the *Conley* pleading standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard," the Supreme Court announced that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint. *Id.* at 563, 127 S.Ct. at 1969.

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.' " *In Re: Katrina Canal Breaches Litigation,* 495 F.3d 191, 205 (5th Cir.2007) quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly,* 550 U.S. at 556, 127 S.Ct. at 1965 (internal citations omitted). "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his favor, the complaint states any valid claim for relief." *Lowery v. Texas A & M University System,* 117 F.3d 242, 247 (5th Cir.1997) quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1357, at 601 (1969).

### The Breach of Implied Good faith and Fair Dealing

Article 1983 of the Louisiana Civil Code provides, "Contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on the grounds provided by law. **Contracts must be performed in good faith.**" La. Civ. Code art. 1983. *Guidry v. East Coast Hockey League, Inc.,* 844 So.2d 100 (La. App. 3rd Cir. March 5, 2003) (Performing in good faith under a contract is a remedy which the law unequivocally provides to each party to the contract). However, the mere failure to fulfill a contractual obligation, without showing of intent or ill will, does not constitute a breach of good faith under Louisiana law. *Lake Forest Management, LLC v. Healthmark Partners, Inc.*, 2004 WL 1794555, *6 (E.D.La. Aug. 9, 2004) (Fallon, J.) citing *Brill v. Catfish Shaks of America, Inc.* 727 F. Supp. 1035, 1041 (E.D. La. 1989) (Mentz, J.).

In the First Amended Complaint, plaintiff resigned on January 27, 2011. Plaintiff alleges that during a telephone conference held on February 9, 2011, Pike Electric did not inform plaintiff that it was not going to pay vacation or severance as provided for under the Employment Agreement. On February 14, 2011, he again requested that the process move forward. Nothing was allegedly forthcoming including the Release which was necessary under the terms of the Employment Agreement. It was not until plaintiff filed suit, nearly two months later that the Release was provided and which allegedly is more onerous and in contravention of the Employment Agreement. As such, the Court finds that these allegations particularly those concerning Pike Electric's actions after Westbrook exercised his rights under the Employment Agreement to terminate his relationship withstand defendants' motion to dismiss. The Court finds that taken in the light most favorable to the plaintiff and with every doubt resolved in his favor, the complaint states a valid claim for relief.

### Claim for Enrichment Without Cause

Plaintiff has alleged that Pike Electric obtained the benefit of his knowledge, skill and work in consideration for the promise of being treated fairly and compensated properly. Thus plaintiff claims that Pike Electric has improperly gained or been enriched by virtue of their non-payment of monies and benefits that are due. Defendant contends this remedy is unavailable because a cause of action for unjust enrichment lies only where no other remedy is provided under the law. *Louisiana National Bank of Paton Rouge v. Belello*, 577 SO.2D 1099, 1102 (La. App. 1st Cir. 1991); *Coastal Environmental Specialists, Inc. v. Chem-Lig International, Inc.*, 818 So.2d 12 (La. App. 1st Cir. 2001). The Court agrees with this argument.

As the Court noted with respect to an unjust enrichment claim in *Bauer v. Dean Morris, L.L.P.*, 2011 WL 1303806 (E.D.La. March 30, 2011):

> Article 2298 of the Louisiana Civil Code provides, in pertinent part, that:
>
>> A person who has been enriched without cause at the expense of another person is bound to compensate that person. . . . The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.
>
> The requisite elements of a claim for unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the impoverishment, (4) an absence of justification or cause for the enrichment and impoverishment, and (5) no other available remedy at law. *Baker v. Maclay Props. Co.*, 648 So.2d 888, 897 (La. 1995). "The unjust enrichment remedy is 'only applicable to fill a gap in the law where no express remedy is provided.'" *Walters v. MedSouth Record Management, LLC*, 38 So. 3rd 243, 244 (La. 2010), quoting *Mouton v. State*, 525 So.2d 1136, 1142 (La. App. 1st. Cir. 1988).

*Id*. at *8.

Furthermore, whether plaintiff succeeds or not with respect to his other claims is immaterial. The mere fact that there are alternative remedies available precludes a claim for unjust enrichment. For example in *Walters v. MedSouth Record Management, LLC,* 38 So.3d 243, 244 (La. 2010), the Supreme Court for the State of Louisiana concluded that because plaintiff there had pleaded a delictual action, plaintiff was "precluded from seeking to recover under unjust enrichment." *Id.*

Thus, considering plaintiff has alleged causes of action based on breach of contract, breach of implied duty of good faith and fair dealing and a violation of the Louisiana Unfair Trade Practices Act, a claim for unjust enrichment cannot lie and must be dismissed. Accordingly,

**IT IS ORDERED** that Pike Electric, LLC's Rule 12(b)(6) Motion to Dismiss (Doc. 4) filed by defendants is **DENIED** with respect to the breach of implied good faith and fair dealing claim and **GRANTED** with respect to the enrichment without cause claim.

New Orleans, Louisiana, this 30th day of June, 2011.

*[signature]*

**STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT COURT JUDGE**